O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELITE LOGISTICS CORPORATION and on behalf of all others similarly situated, | ) ) ) ) | Case No. CV 11-02952 DDP (PLAx) |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | ) ) | |
| MOL AMERICA, INC., | ) ) | [Dkt. No. 20] |
| Defendant. | ) ) | |

Presently before the court is a Motion to Compel Arbitration filed by Defendant Mol America, Inc. ("Mol"). The Motion is substantially similar to a motion filed by the defendant in a related case, <u>Unimax Express, Inc. v. Cosco North America, Inc.</u>, No. CV 11-2947 DDP. This court denied the motion to compel arbitration in the related case. (See No. CV 11-2947, Dkt. No. 22.) Having considered the submissions of the parties in this case, the court denies the instant Motion on the grounds discussed in <u>Unimax v. Cosco</u> and reiterated below, and adopts the following order.

///

**I.   Background**

Mol transports cargo containers over sea and land. Mol contracts with trucking companies such as Plaintiff Elite Logistics Corp. ("Elite") for the overland portions of Mol's shipments. When truckers do not pick up loaded containers within the agreed upon time, equipment providers such as Mol charge truckers "demurrage," or late pick-up, fees. Similarly, when trucking companies do not return empty containers on time, Mol charges "per diem," or late drop-off, fees.

Mol only contracts with carriers who are signatories to a standard contract, the Uniform Intermodal Interchange and Facilities Access Agreement ("the Agreement"). The Agreement was drafted by the Intermodal Association of North America ("the Association"), a trade organization located in Maryland.[1] Elite has signed the Agreement.

The Agreement contains an arbitration provision ("the Provision"). The Provision sets forth default procedures for resolving disputes "with respect to per diem [i.e. late drop-off] or maintenance and repair invoices." (Agreement § H.1). Invoiced parties must provide written notification of disputed charges within thirty days of receipt of the disputed invoice. (Agreement §§ H.2-H.3.) If an invoiced party fails to timely provide written notice of a dispute, that party may not seek arbitration or assert any other defense against the invoice, and must pay the invoiced charges immediately. (Agreement § H.3.)

---

[1] The Association is not a party to this action.

If arbitration is sought, the Association will appoint a three-member panel to resolve the dispute. (Agreement ¶ 3.) "Disputes must be confined to charges arising from Maintenance and Repair . . . or Per Diem [late drop-off] invoices." (Agreement, Ex. D ¶ 6.) Once an arbitration is initiated, the moving party has fifteen days to submit written arguments to the Association. (Id. ¶ 7.) The non-moving party then has fifteen days to submit responses. (Id. ¶ 8.) The arbitration panel will then render a decision based on the written submissions of the parties. (Id. ¶ 9.) If further information is required, the panel "may" hold a conference call with both parties. (Id. ¶ 10.) The panel's decisions are final, and are not subject to appeal. (Id. ¶ 11.)

On April 7, 2011, Elite filed the instant action against Mol, alleging that Mol unlawfully levies late pick-up and late drop-off fees on weekends and holidays in violation of California Business and Professions Code § 22928. Mol now moves to compel Elite to arbitrate its claims under the Agreement.

**II.   Legal Standard**

Under the FAA, 9 U.S.C. § 1 et seq., a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the court for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4; see e.g., Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1526-27 (1997) (considering a motion to compel arbitration). In considering a motion to compel

3

arbitration, the court must determine whether there is a duty to arbitrate the controversy, and "this determination necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." Stirlen, 51 Cal. App. 4th at 1527 (internal citation omitted). The determination of the validity of an arbitration clause, which may be made only "upon such grounds as exist for the revocation of any contract," is solely a judicial function. Id. (internal citation omitted).

If the court is satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not at issue, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 3. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

**III. Discussion**

    A.   Viability of Unconscionability Defense

Elite opposes Mol's instant motion on the grounds that the Provision is unconscionable and, therefore, unenforceable. As an initial matter, the court rejects Mol's suggestion that this argument is controlled by the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011). Concepcion limited state-law-based unconscionability challenges to class-action waiver provisions in arbitration agreements. Concepcion, 131 S.Ct. at 1753. The Court recognized, however, that "agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. at

4

1746; See also Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 963 (9th Cir.2012) ("Concepcion did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved. Rather, the Court affirmed that the [FAA's] savings clause preserves generally applicable contract defenses such as unconscionability . . . ."); Community State Bank v. Strong, 651 F.3d 1241, 1267 n.28 (11th Cir. 2011) ("The ability of such contractual defects to invalidate arbitration agreements is not affected by the Supreme Court's decision in [Concepcion]. . . .").

B. Choice of Law

Before determining whether the Provision is valid, this court must first determine, under the choice-of-law rules of the forum state, which state's laws apply. Pokorny v. Quixtar, 601 F.3d 987, 994 (9th Cir. 2010). Here, the Agreement contains a Maryland choice of law provision. (Agreement § G.7.) In California, courts generally respect choice-of-law provisions within contracts that have been negotiated at arm's length. Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464 (1992).[2] Choice-of-law provisions will not be enforced, however, if "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties choice" or 2) the chosen state's law is contrary to the fundamental public policy of

---

[2] The court notes that here, as discussed further infra, the Agreement was not negotiated at arm's length. The Association drafted the standard language of the Agreement, to which Elite had to agree in order to conduct business with Mol. "[C]ourts should not apply choice-of-law provisions in adhesion contracts if to do so would result in substantial injustice to the adherent." Flores v. American Seafoods Co., 335 F.3d 904, 918 (9th Cir. 2003) (internal quotation marks omitted).

5

a state that has a materially greater interest in the issue at hand and whose law would otherwise apply. <u>Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.</u>, 622 F.3d 996, 1002-1003 (9th Cir. 2010); <u>Nedlloyd</u>, 3 Cal.4th at 465.

Here, Maryland has no relationship to the parties or the transactions at issue here. No party is located in Maryland, nor does it appear that any party conducts substantial business in Maryland. Elite asserts, and Mol does not dispute, that all of the transactions relevant here occurred in California. Elite's claims arise under California state law alone. This case's only tie to Maryland is the fact that the Association, which drafted the Agreement, is located in Maryland. The Association, however, is not a party to this case. The court cannot find any reasonable basis to apply Maryland law where the only conceivable connection to Maryland is a contract of adhesion drafted by a third party. Accordingly, California law applies.

C. Validity of the Arbitration Provision

Unconscionability has generally been recognized to include (1) an absence of meaningful choice on the part of one of the parties and (2) contract terms which are unreasonably favorable to the other party. <u>Stirlen</u>, 51 Cal. App. 4th at 1531. Put another way, unconscionability has a "procedural" and "substantive" element. See <u>Kilgore</u>, 673 F.3d at 963. "[A]n arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." <u>Pokorny</u>, 601 F.3d at 996.

California courts apply a "sliding scale" analysis in making this determination. "[T]he more substantively oppressive the

6

contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000). Both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, but they need not be present to the same degree. Id.; See also Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406 (2003).

1. Procedural Unconscionability

Mol's contention that the Agreement is not adhesive is not persuasive. Mol appears to argue that Elite had some voice the in the drafting of the Agreement, presumably because motor carriers were represented on the Association's Executive Committee. (Mot. at 14; Reply at 20.) There is no evidence, however, that Elite took part in any negotiations. Indeed, Elite insists that it did not. (Opp. at 11.) Mol further asserts that the Agreement was not adhesive because Unimax had already signed on to the Agreement prior to the adoption of the Arbitration Provision. (Mot. at 14.) Mol does not, however, dispute Unimax's assertion that Unimax had to agree to the standardized Agreement, including the Provision, in order to conduct business as an intermodal carrier after the adoption of the Provision in 2008.

It is well settled that standardized, adhesive contracts drafted by the stronger party are procedurally unconscionable. Pokorny, 601 F.3d at 996. The fact that the Association, and not Mol, drafted the Provision's language, does not affect the strength of the parties' relative positions. Though Mol did not itself draft the Agreement, it clearly approved of the Provision's

7

language, and proceeded to present the Provision to Elite on a take it or leave it basis. Elite could not operate as an intermodal carrier unless it agreed to the Provision. As such, the Provision is procedurally unconscionable. See, e.g. Bridge Fund, 622 F.3d at 1004 ("California law treats . . . terms over which a party of lesser bargaining power had no opportunity to negotiate[] as procedurally unconscionable to some degree.") (citing Armendariz, 24 Cal.4th at 114); Pokorny, 601 F.3d at 996 ("An agreement or any portion thereof is procedurally unconscionable if 'the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation.'") (quoting Szetela v. Discover Bank, 97 Cal.App.4th 1094 (2002)).

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the one-sidedness of the contract terms. Armendariz, 24 Cal.4th at 114. "Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" Ting, 319 F.3d at 1149 (citing Armendariz, 319 F.3d at 117).

Here, the burdens of the arbitration procedures fall inordinately on the invoiced party. If Elite believes it has been improperly charged, it must provide written notice of the dispute to Mol within thirty days, at pain of forfeiting any defense to such charges, regardless of whether the charges are proper. This thirty-day notice period operates as a statute of limitations shorter than the four-year claim period available under California law, and works solely to Mol's benefit. See California Business and Professions Code § 17208.

8

Other terms of the Provision also operate solely to Mol's benefit. While both parties could theoretically initiate an arbitration, the burden is always on the invoiced party to initiate a dispute. (Agreement § H.1.) Though an invoiced party may receive any number of invoices in a given thirty-day period, it may not dispute more than five invoices in a single arbitration. (Agreement Ex. D ¶ 6.) Here, it appears that Mol took over one hundred billing actions during some months. (Declaration of Don Licata in Support of Motion, Ex. 1.) When an invoiced party believes it has been wrongly charged and proceeds to arbitrate five or fewer charges, it must submit all of its arguments to the arbitration panel first. The invoiced party must articulate its arguments with a clarity bordering on prescience, for it has no right to discovery and will have no opportunity to rebut the invoicing party's response (notwithstanding the possibility that the arbitration panel "may" initiate a conference call).

Finally, even if the invoiced party receives a favorable determination, the arbitration panel lacks the power to enjoin the invoicer's wrongful conduct, leaving the invoicer free to repeat the offense. In the case of an ongoing violation, the invoiced party's only option is to initiate a separate dispute every thirty days, ad infinitum. Under these circumstances, the arbitration procedures lack even a modicum of bilaterality, and the Provision is, therefore, substantively unconscionable.

**IV. Conclusion**

9

For the reasons stated above, Defendants' Motion to Compel Arbitration is DENIED.[3]  Any class certification motion shall be filed within ninety days of the date of this order.

IT IS SO ORDERED.

Dated: June 21, 2012

DEAN D. PREGERSON
United States District Judge

---

[3] The court acknowledges that the Los Angeles County Superior Court disagreed with this court's reasoning regarding the viability of the unconscionability defense and compelled arbitration in Elite Logistics Corp v. Wan Hai Lines, et al., Case No. BC 459050 and Unimax Express v. Hyundai Merchant Marine, Case No. BC 459051.

10