O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELITE LOGISTICS CORPORATION and on behalf of all others similarly situated, | ) ) ) ) | Case No. CV 11-02952 DDP (PLAx) |
| Plaintiff, | ) ) | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| MOL AMERICA, INC., | ) ) | [Dkt. No. 63] |
| Defendants. | ) ) | |

Presently before the court is Plaintiff's Motion for Partial Summary Judgment Regarding Declaratory and Injunctive Relief. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following order.

**I.   Background**

Defendant MOL (America) Inc. ("MOL") is an international ocean carrier, and transports cargo in shipping containers MOL owns. (Declaration of Don Licata, ¶3).  Independent motor carriers, or truckers, such as Plaintiff, transport MOL's cargo containers from ports to inland distribution centers, then return the empty

containers to MOL at the port. (Id. ¶ 5.) MOL contracts with the cargo owners, not the truckers, for the overland transport. (Id. ¶ 6.) The cargo owners, in turn, hire and pay the truckers. (Id. ¶ 7.)

MOL's contracts with cargo owners provide for some period of "free time," during which MOL does not charge customers for the use of its shipping containers. (Id. ¶ 13.) When containers are returned after the expiration of the "free time" period, MOL assesses a "detention charge." (Id. ¶ 10.) In other words, MOL allows its cargo customers to check out, or borrow, the shipping containers containing the cargo owners' property at no charge for a certain time period. Ideally, the container can be delivered, unloaded, then returned to MOL within the "free time" period. If the container is returned late, however, MOL charges a late return fee.[1]

While cargo owners contract with MOL to transport containers to the inland container yard, the independent truckers actually pick up, transport, and return MOL's containers. The truckers are not, however, parties to the transportation service contract.[2] Nevertheless, when truckers are late returning MOL's containers, for whatever reason, it is the truckers, not the contracting cargo owners, who must pay the late fee. (Id. ¶ 15.) Truckers pay the

---

[1] The parties refer to this late fee either as a "detention charge" or "per diem."

[2] Though the record is somewhat unclear, the parties appear to agree that this case only concerns what the parties dub either "CY moves" or "merchant haulage" scenarios where truckers deliver containers to a container yard. In "door move" scenarios, in contrast, MOL itself hires a trucker to deliver cargo to the cargo owner's facility. (Licata Decl. ¶¶ 6-7).

2

late fees, then in turn bill cargo owners for those fees. (Declaration of Erich Wise, Ex. A at 20). If truckers refuse to pay late fees, they may be denied access to shipping containers and essentially foreclosed from doing business. (Id. at 21).

In 2005, California enacted Business and Professions Code § 2298, which states:

> (b) An intermodal marine equipment provider or intermodal marine terminal operator shall not impose per diem, detention, or demurrage charges on an intermodal motor carrier relative to transactions involving cargo shipped by intermodal transport under any of the following circumstances:
> (1) When the intermodal marine or terminal truck gate is closed during posted normal working hours. No per diem, detention, or demurrage charges shall be imposed on a weekend or holiday, or during a labor disruption period, or during any other period involving an act of God or any other planned or unplanned action that closes the truck gate.

Cal. Bus. & Profs. Code § 2298.

By this motion for partial summary judgment, Elite seeks a declaratory judgment that California Business and Professions Code § 2298 prohibits MOL from charging late fees on any weekend or holiday, as well as related injunctive relief.[3]

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions

---

[3] This motion does not seek summary judgment regarding damages.

of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d

4

1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

### III. Discussion

    A.   Preemption

MOL argues that Section 2298 is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1). That statute states, in relevant part, that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The question presented here is whether Section 2298 is sufficiently connected with, or makes reference to, motor carrier rates, routes, or services. Rowe v. New Hampshire Motor Transp. Assoc., 552 U.S. 364, 370 (2008)(citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). MOL appears to argue that because truckers pass the cost of late fee charges on to cargo owners, any law affecting the upstream fees charged to the truckers affects or is related to the fees the truckers themselves charge, and is therefore preempted. (Opp. at 13).

Section 2298 regulates the fees that marine equipment providers such as MOL may charge motor carriers. The statute does not require anything of the carriers themselves. Thus, the effect of Section 2298 on motor carriers' rates or services with respect to transportation of property is indirect, at best. While a law having even an indirect effect on rates, routes, or services may,

5

in some cases, be preempted, the FAAA does not preempt state laws that affect prices, routes, or services "in only a tenuous, remote, or peripheral manner." Dan's City Used Cars, Inc. v. Pelkey, 133 S.Ct. 1769, 1778 (2013) (citations and alteration omitted); Rowe, 552 U.S. at 370.

In Rowe, Maine passed a law (1) requiring tobacco retailers to use delivery services that used particular recipient-verification services and (2) forbidding transportation of tobacco under certain circumstances and from certain shippers. Rowe, 552 US. at 368. The Supreme Court held that Maine's recipient-verification law, which regulated shippers rather than carriers, was "less 'direct' than it might be," but nevertheless effectively required motor carriers to offer services that they otherwise would not provide, thus hampering the competitive market forces that the FAAA was designed to protect. Id. at 371-72. More damningly for preemption purposes, the state statute's imposition of civil liability upon motor carriers for failure to conduct certain specific inspection procedures directly regulated shippers' services. Id. at 372-73. Accordingly, the Court held Maine's law preempted.[4] Id. at 377.

Here, unlike the statute at issue in Rowe, California Business & Professions Code § 2298 has no regulatory effect, whether direct or indirect, on motor carriers' services. At most, by limiting

---

[4] In American Trucking Associations, Inc. v. City of Los Angeles, the Supreme Court recently held that the FAAA preempted a Port of Los Angeles requirement that truckers display certain placards and submit parking plans to city authorities. Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 133 S.Ct. 2096, 2100, 2105. There, however, there was no dispute whether the Port's regulations were related to truckers' services. Id. at 202. The issue rather, was whether the Port's regulations had the force and effect of law. Id.

6

truckers' exposure to certain fees, Section 2298 has a tenuous impact on truckers' prices.  Elite, for its part, disputes even this peripheral link, asserting that it invoices per diem fees separate and apart from its freight rates, which are independent of such charges. (Wise Decl., Ex. A.)  Even if Elite did build late fees into its fee structure, the effect of that increased cost would be remote, akin to that of other state-imposed input costs resulting from such regulations as highway weight and clearance restrictions, speed limits, and fuel taxes.  Section 2298's impact on truckers' prices, routes, and services, if any, is sufficiently remote as to fall outside the ambit of the FAAA preemption provision.

B.   Meaning of Section 2298

Section 2298 prohibits late fees "[w]hen the intermodal marine or terminal truck gate is closed during posted normal working hours."  A trucker cannot, of course, return an overdue container if the truck gate is closed.  The parties appear to agree that MOL cannot, and does not, currently charge late fees when the truck gate is closed.

Elite contends, however, that Section 2298 forbids the imposition of late fees on any weekend or holiday, regardless whether the terminal is open for business.  Specifically, Elite points to the second sentence of Section 2298(b)(1), which reads, "No per diem, detention, or demurrage charges shall be imposed on a weekend or holiday, or during a labor disruption period, or during any other period involving an act of God or any other planned or unplanned action that closes the truck gate."

Courts need not look beyond the clear language of a statute to determine its meaning. <u>Clayworth v. Pfizer, Inc.</u>, 49 Cal.4th 758, 770 (2010). The second sentence of Section 2298(b)(1) sets forth a number of "planned and unplanned action[s]" that could conceivably result in the closing of the truck gate. Absent any limitation other than the closed gate language, the statute would be so broad as to be meaningless. See <u>Metcalf v. Country of San Joaquin</u>, 42 Cal. 4th 1121, 1135 (2008); <u>Hensel Phelps Const. Co. v. San Diego Unified Port Dist.</u>, 197 Cal. App. 4th 1020, 1034 (2011). Without any geographical or temporal restriction on the terms "labor disruption period" or "act of God," the statute might theoretically be applicable at any given moment. Nor would it make sense to read into those phrases a requirement that each scenario disrupt operations at the terminal, as the "closes the truck gate" language, which Plaintiff seeks to ignore with respect to weekends and holidays, serves precisely that purpose.

To the extent the statutory language is ambiguous, Section 2298's legislative history confirms that it applies only when the truck gate is closed. See <u>Alejo v. Torlakson</u>, 212 Cal. App. 4th 768, 787 (2013). The legislative analysis of the bill that became Section 2298 stated that the bill "stems from the complaints of the commercial vehicle operators . . . regarding the penalties imposed for the late return of cargo containers which they characterize as unfair and unwarranted. These vehicle operators argue that they are 'charged late fees for the return of empty containers, even when terminals are closed . . . ." CA. B. An., S.B. 45 Assem., 7/1/2005. A later analysis specified that the bill prohibits late charges "[w]hen the marine terminal or terminal truck terminal is

8

closed." CA. B. An., S.B. 45 Sen., 8/18/2005. This history confirms that Section 2298 applies only when the truck gate is closed, and not, as Plaintiff contends, on any and all weekends and holidays.

Because Section 2298 prohibits late fees only on weekends and holidays when the truck gate is closed, Elite's Motion for Summary Judgment Regarding Declaratory and Injunctive relief is denied, insofar as it seeks a declaratory judgment that MOL cannot charge late fees on any weekend or holiday and injunctive relief against such charges.

    C.   Pass-On Defense

MOL also contends that Elite lacks standing to pursue the relief requested because it passes on any late fee charges to the cargo customer, and therefore has not sustained any injury. (Opp. at 20.) MOL did not, however, fully brief its argument. In any event, the court need not reach the issue, having rejected Elite's interpretation of Section 2298 and determined that Elite's motions must be denied. The court notes, however, that the California Supreme Court has rejected such a "pass-on" defenses, even outside the antitrust context. <u>Kwikset Corp. v. Superior Court</u>, 51 Cal.4th 310, 334; <u>Clayworth</u>, 49 Cal. 4th at 789 ("That a party may ultimately be unable to prove a right to damages . . . does not demonstrate that it lacks standing to argue for its entitlement to them. . . . [M]itigation, while it might diminish a party's recovery, does not diminish the party's interest in proving it is entitled to recovery.).

///

///

**IV.   CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment Regarding Declaratory and Injunctive relief is DENIED.

IT IS SO ORDERED.

Dated: August 29, 2013

DEAN D. PREGERSON
United States District Judge