O

1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           CENTRAL DISTRICT OF CALIFORNIA

10

11   ELITE LOGISTICS CORPORATION   )   Case No. CV 11-02952 DDP (PLAx)
     and on behalf of all others   )
12   similarly situated,           )
                                    )
13                 Plaintiff,       )   **ORDER DENYING PLAINTIFFS' MOTION**
                                    )   **FOR CLASS CERTIFICATION**
14        v.                        )
                                    )
15   MOL AMERICA, INC.,             )   [Dkt. No. 119]
                                    )
16                 Defendants.      )
     _____)

17

18        Presently before the court is Plaintiffs' Motion for Class

19   Certification.  Having considered the submissions of the parties

20   and heard oral argument, the court denies the motion and adopts the

21   following order.

22   **I.   Background**

23        As described in this court's earlier orders, Defendant MOL

24   (America) Inc. ("MOL") is an international ocean carrier, and

25   transports cargo in shipping containers MOL owns.  Independent

26   motor carriers, or truckers, such as Plaintiffs, transport MOL's

27   cargo containers from ports to inland distribution centers, then

28   return the empty containers to MOL at the port.  MOL contracts with

1  the cargo owners, not with the truckers, for the overland

2  transport.  The cargo owners, in turn, hire and pay the truckers.

3      MOL's contracts with cargo owners provide for some period of

4  "free time," during which MOL does not charge customers for the use

5  of its shipping containers.  When containers are returned after the

6  expiration of the "free time" period, MOL assesses a "detention

7  charge."  In other words, MOL allows its cargo customers to check

8  out, or borrow, the shipping containers containing the cargo

9  owners' property at no charge for a certain time period.  Ideally,

10 the container can be delivered to the cargo owner, unloaded, and

11 then returned to MOL within the "free time" period.  If the

12 container is returned late, however, MOL charges a late return

13 fee.[1]

14     Although cargo owners contract with MOL to transport

15 containers to the inland container yard, the independent truckers

16 actually pick up, transport, and return MOL's containers.  The

17 truckers are not, however, parties to the transportation service

18 contract between MOL and the cargo owners.  Nevertheless, when

19 truckers are late returning MOL's containers, MOL charges late fees

20 to the truckers, not to the contracting cargo owners.

21 The truckers pay the late fees, then in turn bill cargo owners for

22 those fees.  If a trucker refuses to pay late fees to MOL, the

23 trucker may be denied access to shipping containers, essentially

24 foreclosing the trucker from doing business.

25     In 2005, California enacted Business and Professions Code §

26 2298, which states:

27 ────────────────

28      [1] The parties refer to this late fee either as a "detention
charge" or "per diem."

2

1
2
3
4
5
6
7

      (b) An intermodal marine equipment provider or intermodal marine terminal operator shall not impose per diem, detention, or demurrage charges on an intermodal motor carrier relative to transactions involving cargo shipped by intermodal transport under any of the following circumstances:

      (1) When the intermodal marine or terminal truck gate is closed during posted normal working hours. No per diem, detention, or demurrage charges shall be imposed on a weekend or holiday, or during a labor disruption period, or during any other period involving an act of God or any other planned or unplanned action that closes the truck gate.

8  Cal. Bus. & Profs. Code § 2298.

9  Plaintiffs allege, on behalf of a putative class, that MOL

10  violated California Business and Professions Code § 2298 and

11  breached a contract by charging late fees on weekends and holidays.

12  Plaintiffs now move to certify a Rule 23(b)(3) damages class

13  comprised of all intermodal motor carriers who were charged and

14  paid per diem and demurrage detention charges in California for

15  weekend days and holidays when the ports were closed from April 7,

16  2007 to the present.

17  **II.  Legal Standard**

18  The party seeking class certification bears the burden of

19  showing that each of the four requirements of Rule 23(a) and at

20  least one of the requirements of Rule 23(b) are met. See <u>Hanon v.</u>

21  <u>Dataprods. Corp.</u>, 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23(b)

22  defines different types of classes. <u>Leyva v. Medline Indus. Inc.</u>,

23  716 F.3d 510, 512 (9th Cir. 2012). Rule 23(b)(3) requires that

24  "questions of law or fact common to class members predominate over

25  individual questions . . ., and that a class action is superior to

26  other available methods for fairly and efficiently adjudicating the

27  controversy." Fed. R. Civ. P. 23(b). Rule 23(a) sets forth four

28  prerequisites for class certification:

1    (1) the class is so numerous that joinder of all members
     is impracticable, (2) there are questions of law or fact
2    common to the class, (3) the claims or defenses of the
     representative parties are typical of the claims or
3    defenses of the class, and (4) the representative parties
     will fairly and adequately protect the interests of the
4    class.

5    Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508.

6    These four requirements are often referred to as numerosity,

7    commonality, typicality, and adequacy.  See Gen. Tel. Co. v.

8    Falcon, 457 U.S. 147, 156 (1982).

9         In determining the propriety of a class action, the

10   question is not whether the plaintiff has stated a cause of

11   action or will prevail on the merits, but rather whether the

12   requirements of Rule 23 are met.  Eisen v. Carlisle &

13   Jacquelin, 417 U.S. 156, 178 (1974).  This court, therefore,

14   considers the merits of the underlying claim to the extent

15   that the merits overlap with the Rule 23(a) requirements, but

16   will not conduct a "mini-trial" or determine at this stage

17   whether Plaintiffs could actually prevail.  Ellis v. Costco

18   Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

19   Nevertheless, the court must conduct a "rigorous analysis" of

20   the Rule 23 factors.  Id. at 980.  Because the merits of the

21   claims are "intimately involved" with many class

22   certification questions, the court's rigorous Rule 23

23   analysis must overlap with merits issues to some extent.

24   Id., citing Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541,

25   2551 (2011).

26   **III. Discussion**

27        The central issue presented by MOL's Opposition is the

28   applicability of a "pass-on" defense to Plaintiffs', and in

4

1  particular, Elite's, claims.  A pass-on defense seeks to

2  eliminate liability by proving that a plaintiff has passed on

3  an overcharge to a subsequent purchaser, and therefore

4  suffered no injury.  See Clayworth v. Pfizer, Inc., 49 Cal.

5  4th 758, 766 (2010).  Such a defense, if viable, would

6  present serious typicality, adequacy, and predominance

7  problems, and preclude certification of the proposed damages

8  class under Rule 23(b)(3).

9       As explained above, MOL enters into service contracts

10  with cargo owners, but charges late fees to independent

11  truckers, such as Elite.  Elite must pay those fees at pain

12  of being barred from MOL's marine terminal and shut out of

13  the intermodal transportation market.  However, Elite can,

14  and apparently does, seek and obtain payment from cargo

15  owners for the late fees assessed by MOL.

16       As pertinent here, in late 2007, Elite's president and

17  owner, Moon Chul Kang, contested the amount of late fees MOL

18  charged Elite for a shipment to LG Electronics, and sought a

19  discount.[2]  MOL acceded to the request and accepted Elite's

20  payment of 60% of the assessed late fees.  Elite, however,

21  then invoiced and received from LG approximately 170% of the

22  amount Elite paid to MOL.  Thus, although Elite did pay late

23  fees to MOL, including some improperly assessed late fees,

24  Elite was not only reimbursed for those expenses, but

25  ultimately appears to have profited from the exchange.

26

27  ─────────────

28       [2] Elite's representations regarding the reasons for the
discount form the basis of MOL's Counterclaim.

1    MOL contends that, because Elite obtained a windfall
2    from the LG late fee transactions, Elite cannot show that it
3    suffered any damages.  Elite, for its part, argues that the
4    amount of money it received from LG is irrelevant because the
5    "pass-on defense is unavailable for determining standing or
6    damages."  (Opp. at 14.)
7    As this court has previously noted, the California
8    Supreme Court has limited the use of a pass-on defense as a
9    barrier to standing in suits under state antitrust law.
10   Clayworth, 49 Cal. 4th at 789 ("That a party may ultimately
11   be unable to prove a right to damages . . . does not
12   demonstrate that it lacks standing to argue for its
13   entitlement to them. . . . [M]itigation, while it might
14   diminish a party's recovery, does not diminish the party's
15   interest in proving it is entitled to recovery.").  The
16   California Supreme Court extended that principle to a
17   consumer suit under California's Unfair Competition Law in
18   Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 334 (2011).
19   Elite, citing Clayworth and Kwikset, asserts that the
20   pass-on defense "is not viable as a matter of law" with
21   respect to either standing or damages.  (Opp. at 14.)
22   Neither case, however, stands for such a broad proposition.
23   As an initial matter, neither case addressed class
24   certification issues, and both limited discussion of the
25   pass-on defense to questions of standing.  Further, this
26   court is not persuaded by Elite's suggestion that the Kwikset
27   court imposed a general bar on pass-on defenses, or even a
28   bar in all UCL cases.  Rather, the court disapproved of the

defense in the context of a consumer claim for false
advertising.  In <u>Kwikset</u>, a consumer brought suit challenging
the veracity of a lockmaker's claim that its products were
made in the United States.  <u>Kwikset</u>, 51 Cal. 4th at 316.  In
that context, the pass-on defense was premised on the fact
that the locks, regardless of their actual country of origin,
were functional and could be re-sold.  <u>Id.</u> at 333-336.  The
<u>Kwikset</u> court rejected that reasoning, however, because it
ignored consumers' material valuation of intangibles, such as
American manufacture, and the resulting economic harm
resulting from purchases based on misrepresentations,
including transactional costs associated with resale.  <u>Id.</u> at
329, 333-334.

     The court is not persuaded, however, that the <u>Kwikset</u>
court's logic is applicable here, outside the consumer arena,
in a case involving a clear-cut statutory violation, and in
the context of class certification to a question of damages
rather than standing.  Granted, Elite suffered harm when it
was charged illegal late fees.  Its argument for a pass-on
defense bar is premised on the difficulty of apportioning
ostensibly resultant damages, such as "the negative
competitive effects of charging greater amounts to its
customers."  But that policy argument is vitiated by the fact
that Elite charged "greater amounts" to its customers not
merely because Elite itself incurred greater costs, but
because Elite wanted to profit by playing LG off against MOL.
Insofar as advancement of the UCL's goals underpins
proscriptions of the pass-on defense, application of such a

7

1  bar under the circumstances here might do more harm than

2  good.  Nor is the court persuaded by Elite's contention that,

3  because cargo owners are not charged late fees and therefore

4  do not have standing, no party can possibly recover for

5  illegally charged late fees absent imposition of the bar.

6  Only those parties who were made whole, or who, like Elite,

7  actually profited from the imposition of fees, will face such

8  an obstacle.

9       In any event, regardless of the general availability of

10  pass-on defenses, the above discussion makes clear that the

11  particularities of Elite's interactions with MOL and with

12  cargo customers render Elite's claims, and the defenses to

13  them, atypical of those of the class.  Class certification

14  should not be granted if there is a danger that defenses

15  unique to the putative class representative will become a

16  focus of the litigation.  <u>Hanon</u>, 976 F.3d at 508.  Here, at

17  the very least, questions regarding Elite's unclean hands

18  would prove a distraction.  Accordingly, Elite has failed to

19  satisfy the requirements of Rule 23.

20  **IV.   CONCLUSION**

21       For the reasons stated above, Plaintiff's Motion for

22  Class Certification is DENIED.

23

24  IT IS SO ORDERED.

25

26  Dated: February 2, 2016

27                                   DEAN D. PREGERSON
                                     United States District Judge

28